**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No.: 18-10085 (CSS) |
| PARKER SCHOOL UNIFORMS, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| JEOFFREY L. BURTCH | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No.: 19-50770 (CSS) |
| | ) | |
| v. | ) | |
| | ) | |
| SALEM INVESTMENT PARTNERS, | ) | |
| III, LP AND SIP III HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| JEOFFREY L. BURTCH | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No.: 19-50771 (CSS) |
| | ) | |
| v. | ) | |
| | ) | |
| Plexus Fund III, L.P. and Plexus Fund | ) | |
| QP III, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**[1]

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner
Jason A. Gibson
Zhao Liu
824 N. Market Street, Suite 810
Wilmington, Delaware 19801

**COOCH AND TAYLOR, P.A.**
Robert W. Pedigo
R. Grant Dick IV
1007 N. Orange Street, Suite 1120
Wilmington, DE 19801
-and-

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

-and-
**BROOKS, PIERCE, MCLENDON,**
**HUMPHREY & LEONARD, LLP**
Jeffrey E. Oleynik, Esq.
2000 Renaissance Plaza,
230 North Elm Street
Greensboro, NC 27401

Counsel for Defendants Salem Investment
Partners, III, L.P. and SIP III Holdings, Inc.

**ELLIOTT, THOMASON**
**& GIBSON, LLP**
2626 Cole Avenue, Suite 600
Dallas, TX 75204
      -and-
**CUNNINGHAM SWAIM, L.L.P.**
7557 Rambler Road, Suite 440
Dallas, TX 75231

Special Counsel for Jeoffrey L. Burtch,
Chapter 7 Trustee of Parker School
Uniforms, LLC

**THE BIFFERATO FIRM PA**
Ian Connor Bifferato Ian
Kimberly L. Gattuso
 1007 North Orange St., 4th Floor
Wilmington, Delaware 19801
      -and-
Smith, Anderson, Blount, Dorsett,
Mitchell & Jernigan, L.L.P.
Gerald A. Jeutter, Jr.
Clifton L. Brinson
150 Fayetteville Street, Suite 2300
Raleigh, NC 27601

Counsel for Defendants Plexus Fund III, L.P. and
Plexus Fund QP III, L.P

Dated: October 5, 2021

Sontchi, J. _____

# I.    <u>INTRODUCTION</u>

Before this Court are two (2) pending Motions to Dismiss in the *In re Parker School Uniforms, LLC* Bankruptcy, Case No.: 18-10085; Adv. Proc. Nos. 19:50770 and 19-50771.[2] Four (4) Defendant entities - Salem Investment Partners III, L.P., along with SIP III Holdings, Inc., (hereinafter "Salem"), Plexus Fund III, L.P., and Plexus Fund QP III, L.P., (hereinafter "Plexus"), have filed Motions to Dismiss the Chapter 7 Trustee's First Amended Complaint, with prejudice, for its alleged failure to state a claim against these entities.[3]

In opposition, the Trustee argues that all claims have been sufficiently pled and requests that the Court either permit discovery to be exchanged in order to obtain the information needed to support the claims at issue or for the opportunity to amend the Complaint.

For the reasons stated herein, the Court will grant the Motions to Dismiss in their entirety, without prejudice.

## A.  *Complaint Against Plexus Entities*

Plexus requests dismissal of the Trustee's entire Complaint. For purposes of clarity and organization, the Court finds it helpful to delineate the specific Counts of the Complaint. Count I seeks avoidance of transfers made pursuant to 11 U.S.C. § 547(b);

---

[2] The Court's Opinion will cite Adv. Proc. No. 19-50771 as "Plexus D.I." and Adv. Proc. No. 19-50770 as "Salem D.I." To the extent the citation to both dockets is identical, the Court will simply cite the respective docket as "D.I."

[3] Defendants move to dismiss the Trustee's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b).

Counts II-V seek avoidance of fraudulent transfers made pursuant to 11 U.S.C. § 548(a)(1)(B), § 544, 6 Del. C. §§ 1304(a)(2), 1305(a), 1305(b), the North Carolina Uniform Voidable Transactions Act ("NC UVTA"), NC Gen. Stat. §§ 39-23.4(a)(2), 39.23.5(a), 39.23.5(b), and the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Sec. 24.005(a)(2), 24.006(b) ("TUFTA"); Count VI seeks recovery of avoided transfers under 11 U.S.C. § 550 as well as 6 Del. C. § 1307, NC UVTA § 39-23.7, and TUFTA § 24.008; Count VII seeks recharacterization of subordinated notes from debt to equity; Count VIII seeks avoidance of obligations incurred under the subordinated notes pursuant to 11 U.S.C. § 544 as well as 6 Del. C. §§ 1304(a)(2), 1305(a), NC UVTA §§ 39.23.4(a)(2) and 39.23.5(a), as well as TUFTA §§ 24.005(a)(2) and 24.006(a); lastly, Count IX seeks disallowance of all claims pursuant to 11 U.S.C. § 502(d) and (j).

B.   _Complaint Against Salem Entities_ [4]

The Trustee's Complaint against Salem is strikingly similar if not nearly identical to the Complaint against Plexus in most respects. Count II seeks avoidance under 11 U.S.C. § 548(a)(1)(B); Counts III-IV and VIII seek avoidance pursuant to 11 U.S.C. § 544(b)(1), 6 Del. C. §§ 1304(a)(2), 1305(a) and (b), NC UVTA §§ 39-23.4(a)(2), 39-23.5(a) and (b), and TUFTA §§ 24.005(a)(2), 24.006(a) and (b); Count VII seeks recharacterization of subordinated notes from debt to equity; and Count VI seeks to recover the aforementioned transfers, plus interest thereon to the date of payment and the costs of this action, pursuant 11 U.S.C. § 550(a), 6 Del. C. § 1307, N.C. UVTA § 39-23.7, and/or

---

[4] The Trustee has stipulated to dismiss Counts I and V against Salem. _See_ Salem D.I. 32, 33.

4

TUFTA §24.008; and Count IX seeks disallowance of claims pursuant to § 502(d) and (j). Salem requests that this Court dismiss all Counts of the Trustee's Complaint.

Hence, the overarching issue(s) presented before the Court is whether the Chapter 7 Trustee has sufficiently stated the foregoing claims against the Plexus and Salem entities. For the reasons stated in this Opinion, the Court finds that the Trustee has not.

## II.    JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(H). Venue is proper before the United States Bankruptcy Court for the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    STATEMENT OF FACTS

### A. *The Chapter 7 Trustee's Complaint*

As already discussed, the Trustee's Amended Complaint, filed on January 15, 2020, seeks to avoid and recover $1, 613.212.66 from Plexus and Salem, respectively. Specifically, the Trustee alleges that these monies are owed to Parker School Uniforms, LLC's (hereinafter "Parker") bankruptcy estate because the interest payments made by Parker to Plexus and Salem were either preferences under 11 U.S.C. § 547 and state law under 11 U.S.C. § 544(b), 6 Del. C. § 1304(a)(2), 6 Del. C. §§ 1305(a) and (b),[5] and, additionally or alternatively, fraudulent conveyances under 11 U.S.C. § 548. Moreover, the Trustee seeks to recharacterize certain subordinated notes as equity based on the alleged fact that the loans made to Parker by Plexus and Salem are more akin to equity

---

[5] As noted in the Court's introductory remarks, the Trustee's Amended Complaint also contains identical requests for relief under the North Carolina Uniform Voidable Transactions Act ("NC UVTA") and/or the Texas Uniform Fraudulent Transfer Act ("TUFTA").

investments given the circumstances surrounding said payments, discussed *infra*.

### B. *The Transactions at Issue and Parker's Bankruptcy*

On January 12, 2018, (the "Petition Date"), Parker filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.[6] Prior to the filing of Parker's bankruptcy petition, Parker operated a distribution center and warehouse facility in Houston, TX, as well as forty-seven (47) retail stores in ten (10) states for the sale of school uniforms.[7]

Plexus, along with Salem and Argosy Investment Partners V, L.P., and Argosy Investment Partners Parallel V, L.P., (hereinafter "Agrosy"), invested in Parker through PSU Holdings, LLC (hereinafter "PSU").[8] On June 25, 2015, PSU purchased 100% of Parker from Blue Sage Capital, L.P., (hereinafter "Blue Sage"), amongst other sellers, for cash consideration of $20,601,750.[9] Salem provided $8,080,000 of the investment and Plexus provided $7,040,000 of the investment through equity investments and subordinated notes.[10]

On the same day, PSU, Plexus and Salem, amongst others, entered into an Investment

---

[6] The Complaint attributes Parker's ultimate demise to several business decisions – Parker's decision to utilize a new computer system that was not ready to be rolled out during the height of their busy season resulting in Parker's inability to track inventory and sales, *see* D.I. 3, ¶ 133, as well as certain decisions to expand Parker's growth when it did not have the capability to do so. *Id.*, ¶ 134.

[7] *Id.*, ¶ 11.

[8] *Id.*, ¶ 19.

[9] *Id.*, ¶ 21.

[10] *See* Salem D.I. 27, pg. 2; *see also* Plexus D.I. 20, pg. 2. According to the entities' moving papers, Salem provided $2,080,000 by way of equity investment and the remaining $6 million by way of loan. Plexus provided $1,040,000 by way of equity investment and $6 million by way of loan. The notes provided for monthly interest payments and were subordinated to senior debt held by Frost Bank. *See* D.I. 3, Ex. F. § 2.1.

Agreement whereby PSU was authorized to sell its senior subordinated promissory notes in the amount of $13,500,000 and to issue 1,160,000 Class B Units.[11] The Plexus and Salem entities each received 500,740 Class B Units in exchange for $6 million, respectively.[12] This Investment Agreement was thereafter amended to reflect certain entities which became holders of Class A Units and, as such, were required to make capital contributions to PSU; Plexus and Salem both held Class A and Class B Units.[13] Pursuant to this Amended Investment Agreement, Salem was entitled to elect and appoint two members of the PSU Holdings board of managers, as was Argosy. Plexus was not given any contractual right to do the same but was able to appoint an individual to observe board meetings.[14]

In conjunction with the June 25, 2015 sale, Frost Bank, the subordinated note holders, and Parker entered into a Subordination Agreement which stated that the subordinated notes were guaranteed by Parker.[15]  Also, the Subordination Agreement required Parker to make monthly interest payments.[16] Parker made said interest payments to Plexus from August 2015 through October 2017,[17] and to Salem from August 2015 through August 2017.[18] These interest payments are the subject of the Trustee's preference and avoidance

---

[11] D.I. 3, ¶¶ 23-24.

[12] Salem received 500,741 Class B Units in exchange for $6 million and both Plexus entities received 250,370 Class B Units in exchange for $3 million each. *Id.*, ¶ 25.

[13] *Id.*, ¶32.

[14] *Id.*, ¶¶ 34-35; ¶ 124.

[15] *Id.*, ¶¶ 48-49; *see also* Ex. B.

[16] D.I. 3, Ex. P, § 2.2.

[17] Plexus D.I. 3., Ex. A.

[18] Salem D.I. 3, Ex. A.

claims.

In exchange for Parker's guarantee of the subordinated notes, PSU entered into a Guaranty Agreement with Frost Bank, one of Parker's large lenders, whereby PSU guaranteed all indebtedness, obligations, and liabilities of Parker to Frost Bank.[19] PSU also paid down $2.5 million of debt owed by Parker to Frost Bank.[20]

Despite Blue Sage's assurances on June 25, 2015 regarding the usability of Parker's inventory, it was later determined that approximately $7-10 million of the $22-27 million in inventory was worthless and unusable given that the inventory was part of a uniform program that had been terminated or changed.[21] According to the Trustee, Parker was likely insolvent on the date of the June 25, 2015 sale and continuously thereafter until the Petition Date.[22]

In December of 2016, after Parker executed Amendment No. 7 with Frost Bank, Parker's liquidity and access to credit was allegedly curtailed and reduced.[23] This resulted in Parker and PSU having to invest additional equity to maintain Parker's use of its Frost loan; to do so, Parker, PSU and Frost Bank amended its Subordination Agreement to permit Salem and Plexus, amongst other investors, to increase the amount of the subordinated notes and to extend the notes' maturity dates.[24]

---

[19] D.I. 3, ¶ 46.

[20] *See* Bean Decl., Ex. A.

[21] D.I. 3, ¶¶ 92-95.

[22] *Id.*, ¶ 99.

[23] *Id.*, ¶¶ 66-70.

[24] *Id.*, ¶¶ 73-78.

Prior thereto, in June of 2016, Salem advanced Parker $30,898.00 under a subordinated note, and Plexus advanced Parker $171,110.00 under a subordinated note.[25] Additionally, on December 15, 2016, Salem and Plexus, amongst others, invested additional monies into Parker in exchange for additional Class A units of PSU.[26]

Lastly, in November of 2017, Salem and Plexus made additional advances of $523,482.00 and $61,742.00 via subordinated notes, respectively.[27] This is even though these entities were allegedly aware of Parker's financial distress, including the fact that Parker had failed to pay these entities for the interest on their subordinated notes,[28] and Frost Bank's declaration that Parker was in default of its loan.[29]

Illustrated directly below is a breakdown of the subordinated notes advanced from June 2015 through November 2017:[30]

| Investor | Subord. Notes (eff. 6.25.15) | Class B Units (eff. 6.25.15) | Subord. Notes (eff. 6.16.16) | Subord. Notes (eff. 11.8.17) | Subord. Notes (eff. 11.17.17) |
|---|---|---|---|---|---|
| Argosy Partners | $1,388,899.50 | 115,913 | $494,482.00 | $257,256 | 0 |
| Argosy Parallel | $111,100.50 | 9,272 | $39,535.00 | $20,578 | 0 |
| Plexus L.P. | $3,000,000.00 | 250,370 | $85,555.00 | $30,871 | 0 |
| Plexus QP | $3,000,000.00 | 250,370 | $85,555.00 | $30,871 | 0 |
| Salem LP | $6,000,000 | 500,741 | $255,931.00 | $123,482 | $400,000 |
| Salem Holdings | 0.00 | 0 | $30,898.00 | 0 | 0 |
| **TOTALS:** | **$13,5000,000** | **1,126,666** | **$991,956** | **$463,058** | **$400,000** |

According to the Trustee, the subordinated notes advanced by the Plexus and Salem

---

[25] *Id.*, ¶¶ 76-77.

[26] *Id.*, ¶ 89.

[27] *Id.*, ¶¶ 85-86.

[28] *Id.*, ¶ 166.

[29] *Id.*, ¶ 170.

[30] *Id.*, ¶ 91.

entities on November 8 and November 17, 2017, should be recharacterized as equity investments rather than loans.

## IV.    LEGAL DISCUSSION

### A.    *Standard of Review*

A motion to dismiss is granted when the pleading fails "to state a claim upon which relief can be granted . . . ."[31] "In reviewing a motion to dismiss . . . we treat as true all well-pleaded facts in the complaint, which we construe in the 'light most favorable to the plaintiff.'"[32] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33]  However, "detailed pleading is not generally required."[34]

"[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." [35] In considering a motion to dismiss, the Third Circuit has formulated three steps lower courts must follow in "reviewing the sufficiency of a complaint."[36]

---

[31] Federal Rules of Civil Procedure 12(b)(6).

[32] *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 290 (3d Cir. 2014) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[34] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016).

[35] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)).

[36] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016).

> First, we will note the elements of a claim; second, we will
> identify allegations that are conclusory and therefore not
> assumed to be true, and; third, accepting the factual
> allegations as true, we will view them and reasonable
> inferences drawn from them in the light most favorable to [the
> plaintiff] to decide whether "they plausibly give rise to an
> entitlement to relief."[37]

Accordingly, the Court's role at this stage in the proceedings is to accept the

Trustee's well-pled factual allegations as true and to determine whether those factual

allegations entitle the Trustee to pursue the relief sought in the Amended Complaint.

### B. *Analysis*

#### i. *Count I – § 547 Preference Claim - Insider Issue as to Plexus Only*

Plexus argues that it is neither a statutory nor non-statutory insider and, thus, the

Trustee's preference claim fails as a matter of law. More specifically, Plexus argues that,

because none of the transfers being challenged were made within ninety (90) days of the

Petition Date, the Trustee bears the burden of showing that Plexus was an "insider" of

Parker pursuant to 11 U.S.C. §547(b)(4)(B). According to Plexus, the Trustee has failed to

allege facts sufficient to sustain this burden.

In response, the Trustee argues that the Amended Complaint sufficiently pleads

Plexus' status as either a statutory or non-statutory insider. Specifically, the Trustee relies

on 6 Del. C. § 18-402 to stand for the proposition that the management of a limited liability

company, such as PSU, is vested in its members.[38] According to the Trustee, because PSU

---

[37] *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 326 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020).

[38] 6 Del. C. §18-402 states that, "unless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members …."

owns 100% of Parker and because Plexus is a member of PSU, Plexus is an insider of Parker.

Additionally, the Trustee argues that Plexus is, at a minimum, a non-statutory insider. To support this argument, the Trustee argues that Plexus has a close relationship with Parker because Plexus was a designated observer to the PSU and Parker boards and attended almost all of Parker's board meetings. To the extent that the Trustee has not pled facts to support Plexus' insider status, the Trustee requests that the Court permit discovery to be exchanged for the purpose of discovering information to establish insider status.

In its reply, Plexus acknowledges that 6 Del. C. § 18-402 vests management of a limited liability company in its members unless a limited liability agreement provides to the contrary. Plexus argues that, in this case, the PSU Limited Liability Agreement does just that by providing that PSU's management is vested in a separate board of managers, not its members.[39] According to Plexus, because it was not a member of PSU's board of managers and was not given the contractual right to appoint any members of PSU's board of managers, Plexus was not a statutory insider of Parker.

Furthermore, Plexus emphasizes the fact that the Trustee has not pled any facts to support that Plexus was a non-statutory insider or that the challenged transactions were not conducted at arm's length.

---

[39] D.I. 3, Ex. D, § 4.1.

According to 11 U.S.C. § 547(b), in pertinent part:

> a trustee may … avoid any transfer of an interest of the debtor in property
>
> (1)     to or for the benefit of a creditor;
> (2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3)     made while the debtor was insolvent;
> (4)     made –
> (A)     on or within 90 days before the date of the filing of the petition; or
> (B)     between ninety days and one year before the date of the filing of the petition, *if such creditor at the time of such transfer was an insider* ….

Accordingly, the critical issue here is whether the Amended Complaint sufficiently pleads facts that allege Plexus' statutory or non-statutory insider status. The Court finds that it does not.

11 U.S.C. §101(31)(B) statutorily defines an insider in the corporate context as a director, officer, or person in control of the debtor.[40] 11 U.S.C. § 101(31)(E) further provides that an insider may be an affiliate of the debtor.[41] Here, it is sufficiently clear that the Trustee has not pled any facts to support the contention that Plexus is a statutory

---

[40] This Court applies the statutory definition of an insider of a corporation to a limited liability company. *See In re Our Alchemy, LLC*, No. 16-11569, 2019 WL 4447202 at *5 (Bankr. D. Del. Sept. 16, 2019).

[41] An affiliate is defined as a:

> person who directly or indirectly owns, controls or holds with power to vote, 30 percent or more of the outstanding voting securities of the debtor …. [or] a corporation, 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled or held with power to vote by the debtor or a person who directly or indirectly owns, controls or holds with power to vote 20 percent or more of the outstanding voting securities of the debtor …

*See* 11 U.S.C. § 101(2)(A) - (B); 6 Del. C. § 1301(a)-(b); NC UVTA § 39.23-(1)(a)-(b); TUFTA § 24.002(1)(A) - (B).

insider.[42]

First and foremost, Plexus is not alleged to be a director of Parker. Indeed, pursuant to PSU's Limited Liability Company Agreement, PSU's board of managers controls Parker, and Plexus was not given the right to appoint any managers to PSU's board.[43] Moreover, it is certainly clear that Plexus was not PSU's officer; the Amended Complaint explicitly states that Plexus' officers consisted of Pike, Porter, Sarpa and Balthrope.[44] Furthermore, Plexus is not alleged to have been a person in control of Parker.[45] What is pled is that Plexus owned 13.98% of PSU on the date of the sale and 11.74% as of the petition date.[46] The Trustee does not allege that Plexus had any control over Parker's management. For these reasons, the Court finds that the Trustee has failed to plead facts to support Parker's alleged statutory insider status.

The Court finds that Plexus is neither a non-statutory insider. In order to show that Plexus is a non-statutory insider of PSU, the Trustee has to plead facts to show: (1) a close relationship between the debtor and the creditor; and (2) anything other than

---

[42] 6 Del. C. § 1308(b), TUFTA § 24.002(7)(B) and NC UVTA § 39.23-1(7)(b)'s definitions of statutory insiders are identical to the definition set forth by 11 U.S.C. § 101(31)(B).

[43] D.I. 3, ¶¶ 34-35 (stating only that Salem and Argosy were entitled to elect and appoint two members of the PSU Holdings board of managers). *See also*, D.I. 3, Ex. D (stating that PSU's management is vested in a board of managers rather than its members).

[44] *Id.*, ¶ 38.

[45] "Insider" status is also given to partnerships where the debtor is a general partner, § 101(31)(B)(iv) a general partner of the debtor, § 101(31)(B)(v), and to relatives of general partners, directors, officers, or persons in control of the debtor. § 101(31)(B)(vi). None of these categories are applicable to Plexus and warrant no discussion from the Court.

[46] D.I. 3, ¶ 32, ¶ 197.

closeness to suggest that any transactions were not conducted at arm's length.[47]

Here, the Trustee does not set forth any facts to plausibly establish Plexus' status as a non-statutory insider. Although the Trustee argues that Plexus was a major lender with a small equity interest in PSU,[48] it is well-settled that courts do not apply insider status "absent a showing of a high level of control by the lender."[49]

Moreover, the Trustee's Answering Brief does not address the second prong of the non-statutory insider standard. Even if the Court were to accept the Trustee's argument that Plexus and Parker had a close relationship, the Court simply cannot find any facts to support the second prong – that the transactions at issue were not conducted at arm's length. The Trustee neither pleads nor argues them, and it is recognized that "reasonable financial controls negotiated at arms' length between a lender and borrower do not transform a lender into an insider."[50] Here, the interest payments at issue were made pursuant to a pre-existing obligation incurred a significant amount of time prior to Parker's bankruptcy.

For the reasons set forth above, the Trustee's § 547 claim against Plexus is dismissed. However, the Court will dismiss this claim against Plexus without prejudice to permit the Trustee to amend the Complaint should additional facts come to light

---

[47] *In re Raytrans Holding, Inc.* 573 B.R. 121, 132 (Bankr. D. Del. 2017) (citing *In re Winstar Communications, Inc.*, 554 F.3d 382, 397 (3d Cir. 2009)).

[48] The Plexus entities each held a 6.99% equity interest in PSU as of June 25, 2015, and a 5,87% equity interest as of September 14, 2017. *See* Plexus D.I., 33, pg. 4.

[49] *In re Champion Enterprises, Inc.*, No. 09-14014, 2010 WL 3522132 at *6 (Bankr. D. Del. Sept. 1, 2010).

[50] *Id.*, at *7 (citing *In re Radnor Holdings Corp.*, 353 B.R. 820, 847 (Bankr. D. Del. Nov. 17, 2006)).

affecting Plexus' alleged insider status.

> ii.        *Count II – Fraudulent Transfer Claim § 548*

Both Plexus and Salem argue that the Trustee's § 548 claim should be dismissed on the grounds that Parker received reasonably equivalent value in exchange for the challenged interest payments paid to both entities. Specifically, both entities argue that payment on an obligation is considered reasonably equivalent value, that Parker's interest payments were made in satisfaction of a debt, and thus, Parker received reasonably equivalent value.

At the motion to dismiss stage, a constructive fraudulent clam requires that the debtor plead "an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."[51]

More specifically, pursuant to 11 U.S.C. § 548, in pertinent part,

> [t]he trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily … received less than a reasonably equivalent value in exchange for such transfer or obligation; and was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation ….

11 U.S.C. § 548(a)(B)(ii)(I).

---

[51] *In re AgFeed USA, LLC*, 546 B.R. 318, 336 (Bankr. D. Del. 2016).

This provision "aims to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away."[52] The Third Circuit has explained that "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"[53] In order to make this determination, courts look to a "totality of the circumstances."[54] The factors to be considered include: "(1) the "fair market value" of the benefit received as a result of the transfer, (2) "the existence of an arm's-length relationship between the debtor and the transferee," and (3) the transferee's good faith."[55]

Moreover, it is well-settled that a "transfer made in satisfaction of an antecedent debt or for an obligation for which the debtor was liable presumptively constitutes reasonably equivalent value."[56]

1.  *Fair Market Value*

Plexus invested roughly $7 million and was paid $1,613,212,66 - the challenged interest payments – pursuant to the terms of the subordinated notes discussed *supra*.[57] Accordingly, Parker paid Plexus far less than what Plexus invested in Parker through PSU and certainly got more than "roughly the value it gave," *supra*.

---

[52] *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006) (citing *In re PWS Holding Corp.*, 303 F.3d 308, 318 (3d Cir. 2002)).

[53] *In re Charys Holding Co., Inc.*, 443 B.R. 628, 637 (Bankr. D. Del. 2010) (citing *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007)); *see also In re Fruehauf Trailer Corp.*, 444 F.3d at 212 (explaining that, once a court determines that a debtor received some value as a result of the challenged transfer, courts thereafter compare "whether the debtor got roughly the value it gave").

[54] *In re Fruehauf Trailer Corp.*, 444 F.3d at 213.

[55] *Ibid.* (citing *In re R.M.L., Inc.*, 92 F.3d 139, 148-49, 153 (3d Cir.1996)).

[56] *In re Direct Response Media, Inc.*, 466 B.R. 626, 660 (Bankr. D. Del. 2012).

[57] D.I. 3, ¶ 177.

Salem invested roughly $8 million and was paid interest in the amount of $1,430.933.27. Similarly, Parker paid Salem far less than what Salem invested in Parker through PSU.

As for the issue regarding whether Parker received reasonably equivalent value when "PSU Holdings repaid over $2.5 million of debt owed by Parker to Frost Bank," and as "PSU guaranteed the $20 million Frost Bank Loan for Parker,"[58] the Court finds the Trustee's argument that same was "illusory" as conclusory; nowhere in the Amended Complaint are there facts alleged to support the contention that PSU's guarantee was illusory. Further, although the Trustee argues that Parker was burdened with PSU's $13.5 million subordinated debt by way of the Parker Guarantee, it is undisputed that PSU paid down $2.5 million of Parker's debt to Frost Bank and guaranteed Parker's January 14, 2012 loan agreement with Frost Bank with a $20 million credit line.

While the Trustee's Answering Brief argues that Parker was not contractually obligated to pay Plexus and Salem in satisfaction of an antecedent debt, the Trustee's own Amended Complaint is to the contrary. Specifically, the Amended Complaint states, "Defendants had a right to payment on account of the obligations owed to Defendants,"[59] and that the Transfers were "to or for the benefit of creditor Defendants because each … Transfer reduced or fully satisfied a debt or debts owed to Defendants."[60]

The Trustee also argues that the First Amended Complaint seeks avoidance of the

---

[58] Plexus D.I. 20, pg. 2.

[59] D.I. 3, ¶ 186.

[60] *Id.*, ¶ 187.

Parker Guarantee Agreement and that the avoidance of same would render all the transfers alleged to be made without reasonably equivalent value. The Trustee concedes that the Parker Guarantee cannot be avoided under § 548 given the fact that it was made more than two (2) years prior to the Petition Date but argues that avoidance of same is being sought under state law.

Alternatively, the Trustee argues that, even if the Parker Guarantee could not be avoided under state law, implication of the "savings clause" contained therein provides that the amount of debt actually guaranteed by Parker to Plexus and Salem is $0.00. For the reasons set forth *infra*, namely, because the Trustee has failed to plead the existence of a predicate § 544 creditor to support its state law fraudulent conveyance claims, the Court rejects this argument.[61]

Accordingly, the Trustee's Amended Complaint and arguments regarding fair market value do not convince this Court, even in this infancy stage, that the transactions at issue lack fair market value.

2. *Arm's Length Relationship*

The Trustee asserts that there was not an arm's length relationship between Parker and Plexus, and Parker and Salem, because all of PSU's board and equity members were either officers or directors of Parker, and/or holders of the subordinated notes.

It has already been established that Plexus itself was neither a director nor officer

---

[61] The Court need not reach a substantive conclusion as to whether the "savings clause" limits Parker's liability on the Parker Guarantee to $0.00 because the Trustee has failed to plead a predicate § 544 creditor to pursue state law claims. Because the Trustee concedes that the Parker Guarantee cannot be avoided under § 548, the Trustee's only method of pursuing this theory of recovery would be under state law.

of PSU, nor did it have the contractual right to place a director or officer on PSU's board; accordingly, the Court rejects the Trustee's argument as to Plexus.

As to Salem, while Salem was given the right to appoint two members to PSU's board, Salem contends that it had no control over Parker given that Parker was managed entirely by PSU's board of managers. Indeed, the Amended Complaint does not allege that Salem had any control over Parker aside from Salem's appointment of two directors onto PSU's board of managers.

Moreover, although it is undisputed that both Plexus and Salem were in fact holders of the subordinated notes, the Trustee points to no legal authority to support that being such a holder somehow equates to the absence of an arm's length relationship.

Accordingly, there are no facts pled to support the absence of an arm's length relationship between Parker and the Plexus and Salem entities.

3. *Transferee's Good Faith*

As for this last factor, the Trustee argues that because Plexus and Salem were equity members and debtholders of PSU and placed the burden for certain guaranteed obligations upon Parker, that their good faith has been adequately questioned.

The Court has already discussed the fact that, while Plexus and Salem did place certain of PSU's obligations upon Parker, PSU also guaranteed Parker's obligations and paid down millions of dollars that Parker owed to Frost Bank. Accordingly, the fact that Plexus and Salem placed obligations upon Parker does not, under these circumstances, suggest any bad faith on their part.

Accordingly, and similar to the foregoing, there are no facts pled to support the

absence of either Plexus or Salem's good faith.

Lastly on this issue, while the Court acknowledges the Trustee's argument regarding the need for discovery given that constructive fraud claims generally require factual determinations not suitable on a motion to dismiss, [62] the Court finds that under the circumstances presented, discovery is not warranted. The Trustee's Amended Complaint sets forth that Plexus and Salem had a right to payment on account of obligations Parker owed to them; the right to payment in exchange for an obligation is reasonably equivalent value.[63] Also, it is undisputed that, although Parker guaranteed obligations owed by PSU to Plexus and Salem, PSU also repaid $2.5 million of debt owed by Parker to Frost Bank and issued its own guarantee under a $20 million line of credit. Accordingly, the Court finds that the Trustee has failed to plead facts to support recovery under § 548 and does not see how additional discovery on this issue will be beneficial.

However, should it somehow be discovered that the challenged interest payments were not on account of an antecedent debt, or that the Parker-PSU guarantees lacked reasonably equivalent value, the Trustee may reinstate these claims. Accordingly, the Trustee's § 548 claims are dismissed without prejudice against both entities.

---

[62] *In re Charys Holding Co., Inc.*, 443 B.R. at 638.

[63] *In re Direct Response Media, Inc.,* 466 B.R. 626, 660 (Bankr. D. Del. 2012) (holding that "[a] transfer made in satisfaction of an antecedent debt or for an obligation for which the debtor was liable presumptively constitutes reasonably equivalent value").

iii.    *Counts III, IV (State Law Fraudulent Conveyance) V (State Law Preference Against Plexus Only) and VIII – State Law Avoidance Claims*

Plexus and Salem argue that Counts III-V and VII should be dismissed for the same reasons set forth above with respect to Counts II and I – i.e., reasonably equivalent value, and the absence of a showing that Plexus was an insider of Parker. In addition, as a threshold matter, Plexus and Salem argue that the Trustee has failed to establish the existence of an unsecured creditor who was holding an allowed unsecured claim to support any entitlement to relief under § 544.

With respect to Count V of the Complaint, same is dismissed as to Plexus without prejudice for the same reasons as set forth in the Court's discussion as to Count I given that Delaware courts apply the same standard for non-statutory state law preference claims under the Delaware UFTA as they do for § 547 preference claims,[64] and because the Court has already determined that the Trustee has not plead facts to support Plexus' position as a statutory insider.[65]

With respect to Counts III and IV, these claims are dismissed without prejudice for the same reasons set forth above in connection with the Court's § 548 fraudulent conveyance discussion.[66] For purposes of completeness, the Court will address the

---

[64] *See News Journal Co. v. Little Caesars of Del., Inc.*, 2000 WL 33653432, at *2 (Del. Com. Pl. Oct. 20, 2000) (explaining that "an insider is generally defined as the parties set forth on the list [contained in Section 1301(7)] or someone that has a close enough relationship to the party which warrants closer scrutiny by the Court").

[65] 6 Del. C. § 1301(7)(b)'s definition of a statutory insider is identical to the definition of a statutory insider as set forth in 11 U.S.C. §101(31)(B).

[66] 6 Del. C. § 1304(a)(2), NC UVTA § 39-23.4(a)(2), and TUFTA § 24.005(a)(2) are identical to 11 U.S.C. § 548 in substance and in relation to the issues raised herein; given the Court's discussion as to reasonably equivalent value set forth above, the Court need not discuss the alleged constructive fraudulent conveyances under state law.

parties' argument regarding whether the Trustee has sufficiently pled the existence of an unsecured creditor to support his § 544 claims. The Court finds that the Trustee has not.

> Pursuant to 11 U.S.C. § 544(b), a trustee,
>
>> may avoid any transfer of an interest in property of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

"This strong-arm provision permits a trustee … to step into the shoes of a debtor's unsecured creditor holding a state law avoidance claim and pursue such claim 'on behalf of the bankruptcy estate … for the benefit of the creditors.' If there exists no such creditor, a trustee … may not act under section 544(b)(1)."[67]

Plexus and Salem argue that the Trustee has not sufficiently pled the existence of any unsecured creditor, that the Amended Complaint contains only conclusory allegations that Parker "has creditors whose claims arose before" the challenged transfers were made, and that these creditors were harmed by the making of the transfers.[68]

In response, the Trustee argues that the Amended Complaint references both Parker's Schedules and Proofs of Claim that have been filed for Parker's unsecured creditors. According to the Trustee, the unsecured creditors so listed have standing to assert a fraudulent transfer claim. The Trustee also argues that the Dixon Hughes

---

[67] *In re LSC Wind Down, LLC*, 610 B.R. 779, 784 (Bankr. D. Del.) (citing *Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 266 F.3d 237, 243-44 (3d Cit. 2000)).

[68] *See* D.I. 3, ¶¶ 222-23, ¶¶ 235-36, ¶¶ 252-53.

financing statement shows that there were more than $3 million in accounts payable at the time of the June 25, 2015 sale,[69] and that same constitutes sufficient facts as to the triggering § 544 creditor.  Lastly, the Trustee argues that Plexus, Argosy, Salem and Pike are creditors who satisfy the triggering creditor pleading requirement under § 544.

First and foremost, the Court finds Plexus and Salem's arguments persuasive - that all debtors file schedules and proofs of claims – thus, allowing the Trustee to solely rely on the Schedules and Proofs of Claims in this proceeding would render the predicate creditor requirement of § 544(b) meaningless.

Second, while the Court acknowledges that the Dixon Hughes financing statement shows that there were millions in accounts payable at the time of the sale,[70] same does not apprise the Plexus and Salem entities of whom the creditors entitled to payment on the stated accounts are.[71]

Lastly, the Trustee's argument that Plexus, Argosy, Salem and Pike are the predicate creditors is misguided. First and foremost, the Amended Complaint sets forth that Pike executed a "Waiver and Release of Claims" as part of his severance agreement on June 5, 2017. [72] Thus, the Trustee fails to plead that Pike is an unsecured creditor of Parker.

---

[69] From the Court's review of the Dixon Hughes Audit, it appears that Parker's accounts payable at the time of the sale was $3, 149,075.00. *See* D.I. 3, Ex. G, pg. 10.

[70] *Ibid.*

[71] *See In re LSC Wind Down, LLC*, 610 B.R. at 786 (finding that trustee adequately pled a predicate creditor when numerous unsecured creditors were alleged by name and distinguishing same from *In re Petters Co., Inc.*, where trustee only pled a generalized statement in support of its § 544(b)(1) claim), 495 B.R. 887 (Bankr. D. Minn. 2013).

[72] D.I. 3, ¶ 140.

As to the Trustee's assertion that Plexus, Salem and Argosy are the predicate creditors whose standing is being used to pursue the § 544 claims, the Court finds this argument somewhat confusing, as the Trustee has filed suit against all of the creditors that it is now claiming have standing to pursue § 544 claims.[73]

Overall, the Court finds that the Trustee has not met its burden of pleading a predicate creditor in accordance with § 544. Thus, for all the foregoing reasons, Counts III-V and VIII are dismissed without prejudice; the Trustee is permitted to reinstate these Counts should facts come to light sufficient to satisfy the Court's pleading requirements.

### iv. Count VII – Recharacterization Claim

Plexus and Salem argue that the Trustee's claim to recharacterize the November 2017 subordinated notes should be dismissed given that the entities loaned this money to Parker and, thus, same was never "secretly" meant to be an equity investment. In sum, they argue that they were making a *bona fide* effort to protect their pre-existing investment in PSU, not to gain more of an equity interest.

According to the Trustee, on November 8, 2017, Plexus funded Parker via subordinated notes in the amount of $61, 742.00 and Salem funded Parker via subordinated notes in the amount of $523, 482.00.[74] It is the Trustee's position that these subordinated notes are more appropriately characterized as equity given Parker's

---

[73] The Trustee filed a Complaint against Argosy Investment Partners V, L.P., and Argosy Investment Partners Parallel V, L.P., on November 7, 2019. *See* Argosy D.I. 1, Adv. Proc. No. 19-50769. This Adversary Proceeding was voluntarily dismissed on July 27, 2021. *See* Argosy D.I. 57.

[74] D.I. 3, ¶¶ 85-86. On November 8, 2017, Plexus LP and Plexus QP each funded Parker in the amount of $30, 871.00; Salem LP funded Parker in the amount of $123,482.00 and on November 17, 2017, Salem LP funded Parker in the amount of $400,000.00.

inadequate capitalization and financial distress at the time the notes were advanced.

Plexus and Salem argue that the "support" for the Trustee's claim as pled in the Amended Complaint is contradictory in that the Trustee pleads that the November 2017 funding was advanced in proportion to the amounts of equity invested by Plexus, Salem and Argosy, but in reality, there is no correlation between the amount loaned and the percentage of equity ownership.[75] As an example, Plexus and Salem argue that Salem was the largest contributor to the November 2017 funding but owned less than half as much equity as Argosy.[76]

Pursuant to 11 U.S.C. § 105, bankruptcy courts have equitable authority to recharacterize debt to equity.[77] "In a recharacterization analysis, if the court determines that the advance of money is equity and not debt, the claim is recharacterized and the effect is subordination of the claim."[78] While "[r]echaracterization of debt as equity is a recognized … cause of action," this Court has previously explained that same is difficult to prove.[79]

---

[75] In its Answering Brief, the Trustee excludes Salem's November 17, 2017 funding and focuses solely on the funds advanced by the parties on November 8, 2017 to support the position that the funding was done in proportion to the amount of equity owned by each party. The Court finds this position confusing given the Trustee's request to convert Salem's November 17, 2017 funding to equity in addition to its November 8, 2017 funding. Moreover, the Amended Complaint does not differentiate between the November 8 and November 17 funding, stating only that, "[t]he Nov. 2017 Funding was advanced substantially in proportion to the amounts of equity invested by each of Plexus, Argosy, and Salem." *See* D.I. 3, ¶ 266.

[76] As demonstrated by Plexus' moving papers, Argosy owed a 52.83% equity ownership interest in PSU but only contributed 32.19% of the funding in November 2017, while Salem had a 23.485 equity ownership interest in PSU but contributed 60.65% of the November funding. *See* Plexus D.I., 20, pg. 13.

[77] *In re SubMicron Systems Corp.*, 432 F.3d 448, 454 (3d Cir. 2006).

[78] *In re AutoStyle Plastics, Inc.* 269 F.3d 726, 749 (6th Cir. 2001).

[79] *In re Optim Energy, LLC*, No. 14-10262, 2014 WL 1924908 at *7 (Bankr. D. Del. May 13, 2014).

[T]he characterization of debt or equity is a court's attempt to discern whether the parties called an instrument one thing when in fact they intended it as something else."[80] It is well-established that, when existing lenders make loans to a company facing financial distress, "they are trying to protect their existing loans and traditional factors that lenders consider (such as capitalization, solvency, collateral, ability to pay cash interest and debt capacity rations) do not apply as they would when lending to a financially healthy company."[81] Instead, intent is the driving inquiry in categorizing an advance as a debt or equity in the context of a distressed company.[82] "[T]he parties' intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances."[83]

The Trustee acknowledges that the November 2017 notes have the formalities of instruments of indebtedness,[84] and does not dispute that the form of the notes are identical to those issued in connection with Plexus and Salem's prior notes. Moreover, the Court recognizes that the notes have a fixed interest rate of 12.5% and a fixed date of repayment, common characteristics of loans.[85]

The Trustee's main argument centers on the fact that Parker was undercapitalized

---

[80] *In re SubMicron Systems Corp..*, 432 F.3d at 456.

[81] *Id.*, at 457.

[82] *Id.*, at 458.

[83] *Id.*, at 456.

[84] Salem D.I. 30, pg. 25; Plexus D.I. 33, pg. 26.

[85] *In re SubMicron Systems Corp.*, 432 F.3d at 457 (affirming the District Court's refusal to recharacterize loans as equity when the name given to the fundings at issue was debt and the fundings had a fixed maturity date and interest rate).

at the time the November 2017 notes were advanced and unable to find another lender. However, as mentioned previously, in the context of pre-existing lenders lending to a distressed company, "it is legitimate for the lender to take actions to protect existing loans, including extending additional credit …."[86] Under similar circumstances, courts have found that "[e]xisting lenders are often the only source of funding when a debtor faces distress[,]"[87] and that the "inability to obtain alternative financing is insufficient to support recharacterization."[88]

Furthermore, although the Court certainly acknowledges and takes as true the Trustee's allegations concerning Parker's undercapitalization, "all companies in bankruptcy are in some sense undercapitalized,"[89] and thus, pleading undercapitalization alone is insufficient to support a claim for recharacterization under the circumstances presented.

Accordingly, the Court will dismiss the Trustee's claim for recharacterization without prejudice to permit the Trustee the opportunity to amend the Complaint should additional facts come to light suggesting that Plexus and Salem disguised their equity investment as a loan.

---

[86] *In re Moll Indus., Inc.*, 454 B.R. 574, 583 (Bankr. D. Del. 2011).

[87] *Id.*, at 584.

[88] *Ibid.*

[89] *In re Optim Energy, LLC*, 2014 WL 1924908 at *9.

      *v.*      *Counts VI and IX*

Given Plexus and Salem's positions that there are no transfers made to them that are subject to avoidance, Plexus and Salem argue that the Trustee's claims seeking recovery of avoided transfers should be dismissed.

Because the Court has already found that the Trustee insufficiently pled Counts I-V and VIII, Counts VI and IX are dismissed as to Plexus and Salem without prejudice.

## V.    CONCLUSION

In light of the foregoing discussion, the Trustee's Amended Complaint is **DISMISSED** in its entirety, without prejudice.